**UNITED STATES BANKRUPTCY COURT**          *FOR PUBLICATION*
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re:<br><br>Fairfield Sentry Limited, et al.<br><br><div align="center">Debtors in Foreign Proceedings.</div> | Chapter 15<br><br>Case No. 10-13164 (JPM)<br><br>(Jointly Administered) |
| FAIRFIELD SENTRY LTD. (In Liquidation), et al.,<br><br><div align="center">Plaintiffs,</div><br>v.<br><br>ABN AMRO SCHWEIZ AG a/k/a AMRO (SWITZERLAND) AG, et al.,<br><br><div align="center">Defendants.</div> | Adv. Pro. No. 10-03636 (JPM) |

**MEMORANDUM OPINION AND ORDER DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

*APPEARANCES:*

*Attorney for Defendant, NBK Banque Privée (Suisse) S.A.*
Cirillo Law Office
246 East 33rd Street — # 1
New York, New York 10016
By:     Richard A. Cirillo

*Attorneys for Plaintiffs, Joint Liquidators*
Brown Rudnick LLP
Seven Times Square
New York, NY 10036
By:     David J. Molton
         Marek P. Krzyzowski

**JOHN P. MASTANDO III**
**UNITED STATES BANKRUPTCY JUDGE**

This case presents the question of whether a plaintiff's voluntary dismissal with prejudice against a defendant in one case bars plaintiff from asserting the same or similar claim(s) in a consolidated (for pre-trial and discovery purposes) case that was pending at the same time before the same judge. The Court finds that under the facts and circumstances presented here, the prior voluntary dismissal with prejudice does not bar the claim in the consolidated case.

## I.    INTRODUCTION

Pending before the Court is the motion of the Defendant, NBK Banque Privée (Suisse) S.A. ("NBKS" or "Defendant"), for summary judgment under Federal Rule of Civil Procedure 56, as made applicable by Rule 7056 of the Federal Rules of Bankruptcy Procedure (the "Motion"). Mot. Summ. J., ECF[1] No. 1328. The Court held a hearing on the Motion on June 11, 2024 (the "Hearing"). For the reasons set forth herein, the Court DENIES the Defendant's motion.

## II.    JURISDICTION

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a) and the Standing Order of Reference signed by Chief Judge Loretta A. Preska dated January 31, 2012. This Court previously concluded that it has subject matter jurisdiction over this and related actions. *See In re Fairfield Sentry Ltd.*, 2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018); *see also* Stip. Order, ECF No. 519. Personal jurisdiction is not presently contested by the Defendant. *See* Withdrawal of Mot. to Dismiss, ECF No. 1295.

---

[1]    Citations to this Court's electronic docket refer to the docket of Adv. Pro. No. 10-03636-jpm unless otherwise noted.

## III.    **BACKGROUND**

This adversary proceeding was filed on September 21, 2010.  *See* Cert. Order
Transferring Case., ECF No. 1; Compl. ECF No. 8.  Kenneth M. Krys and Greig Mitchell (the
"Liquidators" or "Plaintiffs"), in their capacities as the duly appointed Liquidators and Foreign
Representatives of Fairfield Sentry Limited (In Liquidation) ("Sentry"), Fairfield Sigma Limited
(In Liquidation) ("Sigma"), and Fairfield Lambda Limited (In Liquidation) ("Lambda" and,
together with Sentry and Sigma, the "Fairfield Funds") filed the Amended Complaint on August
12, 2021.  *See* Am. Compl., ECF No. 679.  Via the Amended Complaint, the Liquidators seek
the imposition of a constructive trust and recovery of over $1.7 billion in redemption payments
made by Sentry, Sigma, and Lambda to various entities known as the Citco Subscribers (the
"Redemption Payments").  *Id.* ¶¶ 1–2, 205–06; *id.* Exs. A–C.[2]

On June 14, 2010, prior to the filing of this adversary proceeding, the Liquidators filed
petitions in this Court under Chapter 15 of the Bankruptcy Code, seeking recognition of the
proceedings in the British Virgin Islands as foreign main proceedings.  Ch. 15 Pet., Case No. 10-
13164, ECF No. 1.  The Court granted recognition on July 22, 2010.  *See* Order Granting
Chapter 15 Pets. 12, Case No. 10-13164, ECF No. 48.  In April 2010, the Liquidators
commenced two actions seeking recovery of payments allegedly received from the Fairfield
Funds by multiple defendants, including NBKS, identified as the beneficiaries of accounts held
in the name of Citco Global Custody NV and Global Custody (NA) NV, in the New York State
Supreme Court, New York County.  *See* Notice of Removal ¶¶ 1–3, ECF No. 1-2; *see also* Mem.

---

[2]        At the time of the filing of the Amended Complaint, the Plaintiffs made no specific allegations as to the
exact amounts received by any of the beneficial shareholders.  With respect to NBKS, the Amended Complaint
states in relevant part that "[b]ased on Fund records, some or all of the Redemption Payments made to the Citco
Subscribers may have been paid to an account holder or holders associated with the Beneficial Shareholder, NBK
Banque Privee Suisse SA."  Am. Compl. ¶ 89.  The Amended Complaint alleges that several other defendants may
have received redemption payments made to the Citco Subscribers.  *Id.* ¶¶ 34–112.

L. 2, ECF No. 1331.  The state court assigned to these actions index numbers 650316/2010 and

650277/2010.  *Id.*  In September 2010, Sentry removed the state court actions to the Southern

District of New York.  *Id.* at 2–3.  The District Court referred the cases to this Court, which

assigned to them adversary proceeding numbers 10-03635 (the "3635 Action") and 10-03636

(the "3636 Action").  *Id.* at 3.

The Court consolidated all Fairfield redeemer actions[3] for pretrial and discovery purposes

on November 9, 2010.  *See* Order Authorizing Consolidation, ECF No. 61.  In March 2022, that

order was lifted and replaced by an order consolidating the 3635 and 3636 Actions "with one

another for pre-trial and discovery purposes."  Am. Order Regarding Consolidation ¶ 2, ECF No.

921.  Under that amended consolidation order, "all pleadings, papers, and discovery materials . . .

served or produced in connection with" the 3635 and 3635 Actions were to be "served upon or

produced to all parties that have appeared" in either proceeding, and all future filings were

ordered to be filed in both proceedings.  *Id.* ¶¶ 3–4.

Defendant NBKS is a corporate entity organized under the laws of Switzerland with a

registered address in Geneva, Switzerland.  Am. Compl. ¶ 89, ECF No. 379.  The Amended

Complaint alleges that "some or all of the Redemption Payments made to the Citco Subscribers

may have been paid to an account holder or holders associated with the Beneficial Shareholder,

NBK Banque Privee Suisse SA."  *Id.*  The complaints filed in the 3635 Action and in the 3636

Action identify different entities as the record subscribers into the Fairfield Funds.  The 3636

Action defines "Citco Record Subscribers" as "accounts held in the names of Citco Global

Custody NV, Citco Global Custody (NA) NV, Citco Fund Services (BVI), and Citco Fund

---

[3]      For a list of the ninety redeemer actions consolidated by this Court in November 2010, see Exhibit A to the
motion of the foreign representatives seeking consolidation.  *See* Mot. Ex. A, ECF No. 9.

Services (Europe) BV," while the 3635 Action defines "Citco Record Subscriber" as "accounts held in the name of CGC NA." Am. Compl. ¶ 8, ECF No. 679; Am. Compl. ¶ 8, 3635 ECF[4] No. 620.

On July 6, 2023, the Liquidators voluntarily dismissed with prejudice the claims against NBKS, and related entity National Bank of Kuwait S.A.K.[5] ("NBKK"), in the 3635 Action. Notice of Dismissal, 3635 ECF No. 1114. The Plaintiffs' notice of dismissal stated that it "does not affect or dismiss any claims made in the [3635 Action] against any defendants other than NBKK or NBKS or claims against NBKK or NBKS in any other action." *Id.*

On October 12, 2023, NBKS filed a letter seeking leave to file a motion for summary judgment. *See* Letter, ECF No. 1296. On January 29, 2024, the Court held a status conference on NBKS's request for leave. *See* Order, ECF No. 1307. On February 27, 2024, this Court granted Defendant leave to file a motion for summary judgment. *See* Order Granting Leave, ECF No. 1327.

NBKS moves for summary judgement on the basis of res judicata, arguing that the claims in the 3636 Action could have been raised in the 3635 Action. *See* Mem. L. at 2, ECF No. 1331; *see also* Stmt. of Undisputed Facts, ECF No. 1329; Declaration of Richard A. Cirillo, ECF No. 1330. Plaintiffs filed an opposition to the motion and submitted a declaration of David Molton in support ("Molton Decl.") and a counterstatement of undisputed facts ("Counterstatement"). *See* Opp'n, ECF No. 1337; Molton Decl., ECF No. 1339; Pls.' Counterstatement, ECF No. 1338.

---

[4]    Citations to this Court's electronic docket of Adv. Pro. No. 10-03635-jpm will be marked "3635 ECF."

[5]    NBKK is alleged in the amended complaint in the 3635 Action to be a corporate entity organized under the laws of Kuwait with a registered address in the State of Kuwait. *See* Am. Compl. ¶ 82, 03635 ECF No. 620. The Defendant states that NBKK is an affiliate of NBKS. *See* Stmt. of Undisputed Facts ¶ 4, ECF No. 1329.

The Defendant filed a reply memorandum on April 19, 2024. *See* Reply, ECF No. 1347. The

Court held a hearing on the motion on June 11, 2024. *See* Hr'g Tr., ECF No. 1356.

## IV.    DISCUSSION

### a.    Standard on Summary Judgment

Summary judgment shall be granted "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a); Fed. R. Bankr. P. 7056 (applying Federal Rule 56). "A genuine dispute of material fact

exists where the evidence is such that a reasonable jury could decide in the non-movant's favor."

*Kee v. City of New York*, 12 F.4th 150, 158 (2d Cir. 2021) (citation omitted). "A fact is material

if it might affect the outcome of the suit under the governing law." *Choi v. Tower Rsch. Cap.

LLC*, 2 F.4th 10, 16 (2d Cir. 2021) (citation omitted).

The moving party has the initial burden of establishing the absence of a genuine issue of

material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Failure to do so means that

the motion for summary judgment must be denied. *Id.* The burden of producing evidence shifts

to the nonmoving party after the moving party has met its burden. *See Anderson*, 477 U.S. at

248. In considering a motion for summary judgment, a court "must resolve all ambiguities and

draw all permissible factual inferences in favor of the party against whom summary judgment is

sought." *Brooklyn Ctr. for Indep. of the Disabled v. Metro. Transp. Auth.*, 11 F.4th 55, 61 (2d

Cir. 2021) (citation omitted).

### b.    Res Judicata

"Under the doctrine of res judicata, or claim preclusion, a final judgment on the merits of

an action precludes the parties or their privies from relitigating claims that were or could have

been raised in that action." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286–87 (2d Cir.

2002) (citing *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). The "underlying purposes of res

judicata" is "protecting litigants from the burden of relitigating an identical issue with the same

party or his privy and . . . promoting judicial economy by preventing needless litigation." *Greco

v. Local.com Corp.*, 806 F. Supp. 2d 653, 661 (S.D.N.Y. 2011) (quoting *Parklane Hosiery Co.,

Inc. v. Shore*, 439 U.S. 322, 326, 99 S. Ct. 645, 58 L. Ed.2d 552 (1979)).

The party alleging res judicata "must show that (1) the previous action involved an

adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with

them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in

the prior action." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 499 (2d Cir. 2014) (quoting

*Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000)).  The burden is on the party

seeking to invoke res judicata to prove that the doctrine bars the second action.  *Computer

Assocs. Int'l, Inc. v. Altai, Inc.*, 126 F.3d 365, 369 (2d Cir. 1997).

The Plaintiffs argue that the first and third elements of res judicata fail; they thus dispute

whether the "previous action involved an adjudication on the merits" and whether the "claims

asserted in the subsequent action were, or could have been raised in the prior action."  Opp'n at

4–5, ECF No. 1337.

### 1.  Final Judgment on the Merits

The Defendant argues that there is "absolutely no doubt that the plaintiffs' voluntary

dismissal was 'on the merits' for res judicata purposes."  Reply at 2, ECF No. 1347.  "A

voluntary dismissal with prejudice is an adjudication on the merits for purposes of *res judicata*."

*Chase Manhattan Bank, NA. v. Celotex Corp.*, 56 F.3d 343, 345 (2d Cir. 1995) (citing *Nemaizer

v. Baker*, 793 F.2d 58, 60 (2d Cir.1986)); *see also Mohamad v. Rajoub*, 767 F. App'x 91, 92 (2d

Cir. 2019) ("Because Plaintiffs voluntarily dismissed their claims against [the defendant] in [an

earlier action filed in 2005 in the district court] with prejudice and because '[a] voluntary

6

dismissal with prejudice is an adjudication on the merits for purposes of res judicata,' . . . we easily conclude that the first factor is met . . . ."). A "notice of voluntary dismissal 'operates as an adjudication on the merits'—and may therefore trigger res judicata—if 'the plaintiff previously dismissed any federal- or state-court action based on or including the same claim.'" *ICICI Bank Ltd., New York Branch v. Doshi*, 2024 WL 1242531, at *3 (S.D.N.Y. Mar. 22, 2024).

The claims against NBKS in the 3635 Action were dismissed via a notice of dismissal filed by the Plaintiffs. *See* Notice of Dismissal, 3635 ECF No. 1114. The dismissal with prejudice of the claims against NBKS in the 3635 Action will typically be deemed a final adjudication on the merits. *See Chase*, 56 F.3d at 345; *see also Vega v. State Univ. of New York Bd. of Trs.*, 67 F. Supp. 2d 324, 334 (S.D.N.Y. 1999) ("Generally, a stipulation of dismissal with prejudice 'is deemed a final adjudication on the merits for res judicata purposes on the claims asserted or which could have been asserted' in the prior action." (quoting *Israel v. Carpenter*, 120 F.3d 361, 365 (2d Cir.1997), *cert. denied*, 522 U.S. 1114, 118 S. Ct. 1049, 140 L. Ed. 2d 113 (1998)).

At the hearing on the motion, the Defendant argued that the Plaintiffs were not under any requirement to "make the dismissal with prejudice." Hr'g Tr. 7:22–23, ECF No. 1356. Defendant explained further that the Plaintiffs "could have made [the dismissal in the 3635 Action] without prejudice or they could have asked the Court to stay the 3635 claims against NBKS while they pursued the 3636 claims," a course of action that the Defendant states "the Second Circuit has identified and indeed recommended as the alternative in cases like this to avoid the preclusive effect of res judicata." *Id.* 7:23–8:4. The Defendant's argument may have merit. It does not by itself preclude the Plaintiffs from pursuing their claims against NBKS in the 3636 Action.

The Plaintiffs argue that while a stipulation of dismissal is generally deemed a final adjudication on the merits for the purposes of res judicata, "that principle does not, in the context of voluntary dismissals, supersede the principle that 'under New York law, a writing must be interpreted 'to give effect to the intention of the parties' as expressed in the writing's unequivocal language.'" Opp'n at 5, ECF No. 1337 (quoting *Vega*, 67 F. Supp. 2d at 334). The Plaintiffs thus ask the Court to "consider[] the intent of the parties made clear in the language of the notice of dismissal when determining the preclusive effect of a notice of dismissal." Opp'n at 5. That intent, the Plaintiffs argue, is "unequivocal that the Liquidators were not seeking to dismiss the claims against NBKS in the pending 3636 Action, . . . ." Opp'n at 6.

In *Vega*, the District Court analyzed whether a stipulation of discontinuance of a prior state court action operated as a "final adjudication on the merits for res judicata purposes on the claims asserted or which could have been asserted." *Vega*, 67 F. Supp. 2d at 334. The District Court reasoned:

> 'Such a stipulation will (almost invariably) have preclusive effect notwithstanding a litigant's post hoc assertion that he intended to preserve certain claims.' [*Israel v. Carpenter*, 120 F.3d 361, 365 (2d Cir.1997), *cert. denied*, 522 U.S. 1114, 118 S.Ct. 1049, 140 L.Ed.2d 113 (1998)]. Thus, a party will ordinarily not be relieved from the preclusive effect of a stipulation because his counsel failed to evaluate carefully its res judicata effect. *Id.* (citing *Nemaizer v. Baker*, 793 F.2d 58, 62–63 (2d Cir. 1986)). Where, however, a party argues that none of those executing the stipulation intended the scope of the stipulation to preclude the subsequent action, the court considers the intent of the parties entering into the stipulation. *Id.* at 366.

*Id.* Following an analysis of the scope of the stipulation, the District Court found that the plain language of the stipulation made it clear that it "precluded only the refiling of the action in state court" and thus did not address the federal action, "which was then pending, and accordingly, the Stipulation does not preclude the continued prosecution of this action." *Id.* at 335. Defendant argues that this case is inapposite, as "the issue was whether a dismissal stipulation agreed to by

a pro se plaintiff in a wrongful-termination proceeding" in state court under state law "precluded the plaintiff from continuing to pursue in a concurrent federal court lawsuit his § 1983 claims arising from the same termination."  Reply at 3, ECF No. 1347.  The situation here is indeed different.  There was no stipulation to which the Defendant agreed in the 3635 Action.  Rather, the Plaintiffs merely filed a notice on their own.  As the Defendant argues, the Plaintiffs are essentially asking the Court to hold that "their unilateral intention as the filer of a dismissal notice controls its res judicata effect."  Reply at 5, ECF No. 1347.[6]  The Court agrees with the Defendant that under the facts of this case the Plaintiffs' intention alone in filing a notice of dismissal does not establish its res judicata effect.[7]

Plaintiffs further cite to *Israel v. Carpenter* to assert that the intention of the parties and language in the writing is relevant for determining the preclusive effect of the voluntary dismissal.  *See* Opp'n at 5, ECF No. 1337 (citing *Israel v. Carpenter*, 120 F.3d 361, 365 (2d Cir. 1997)).  Conversely, Defendant correctly argues that *Israel* is not applicable to this case, as the court held there that Massachusetts law governed the interpretation of the term "with prejudice" and "did not decide that the stipulation precluded the other action . . . ."  Reply at 3–4, ECF No.

---

[6]      Defendant further argues that the District Court's holding was not made "as a question of the intention of the parties in agreeing to the stipulation," but rather as a question of whether the plaintiff could have raised the § 1983 claim in the state court proceeding.  Reply at 5, ECF No. 1347.  Defendant is only partially correct.  The District Court did examine the question of whether the § 1983 claim could have been brought in the prior proceeding.  *See Vega*, 67 F. Supp. 2d at 334.  However, after that analysis, it turned to the preclusive effects of the stipulation of dismissal.  *Id.* ("Defendants next argue that the November 4, 1998 Stipulation . . . precludes any remaining claims in this federal action.").  The District Court stated that where "a party argues that none of those executing the stipulation intended the scope of the stipulation to preclude the subsequent action, the court considers the intent of the parties entering into the stipulation."  *Id.* (citing *Israel v. Carpenter*, 120 F.3d 361, 366 (2d Cir. 1997)).

[7]      At the hearing on this motion, the Defendant argued that the Second Circuit's reasoning in *Farkash v. Five Star Travel Inc.*, 841 F. App'x 278, 280 (2d Cir. 2021), supports its position that the legal effect of a voluntary notice of dismissal with prejudice is not controlled by the filer.  *See* Hr'g Tr. 13:7–17.  In *Farkash*, the Second Circuit reviewed the "district court's interpretation of Rule 41(a)(1)(A)(i) and its application in an individual case."  841 F. App'x at 280.  The Second Circuit's summary order in *Farkash* concerned the intent of a voluntary dismissal with respect to Rule 41, not res judicata.  *See id.* 280–81.  The Court does not find it appropriate to base its decision on the present motion concerning res judicata on that basis.

1347. *Israel* discusses whether the voluntary Stipulation of Dismissal with prejudice of a state

court action precludes a subsequent federal action based on principles of res judicata. *Israel*, 120

F.3d at 363–64.  One district court has summarized the rule from *Israel* as relying on the "well-

settled rule that state law applies in determining the preclusive effect of a stipulation of dismissal

filed in state court . . . ."  *Hamptons Locations, Inc. v. Rubens*, 2005 WL 2436209, at *6

(E.D.N.Y. Sept. 30, 2005), *adhered to in part on reconsideration*, 2006 WL 1455470 (E.D.N.Y.

May 25, 2006).  Plaintiffs offer no support for a federal court to interpret the intent of a dismissal

in a prior action in a federal court.[8]

Plaintiffs cite to *D'Angelo v. City of New York* to ask the court to consider the

circumstances of the voluntary dismissal, including the intent of the parties, when assessing the

res judicata effect.  *See* Opp'n. at 5, ECF No. 1337 (citing *D'Angelo v. City of New York*, 929 F.

Supp. 129, 135 (S.D.N.Y 1996)).  Defendant argues that *D'Angelo* is not applicable as that case

focuses on a federal § 1983 claim and holds that it is not barred under res judicata after a state

action was dismissed for failure to give notice of a previous state law claim.  Reply at 4, ECF

No. 1347.  In *D'Angelo*, the District Court found that "dismissal of an action for failure to satisfy

a condition precedent is not 'on the merits' for res judicata purposes."  929 F. Supp. at 131.  The

District Court went on to find that barring the § 1983 claim simply because of the phrase "'with

prejudice' . . . would frustrate the intent of the parties . . . ."  *Id.* at 135.  Importantly, the District

Court considered the intent of the parties as both parties were aware of both claims and mutually

entered the stipulation to dismiss the state claim.  *Id.* at 134–35.  Unlike the circumstances at

issue in *D'Angelo*, the dismissal of the 3635 Action was accomplished without the consent of

---

[8]     The Second Circuit has declined to base its res judicata analysis "on only one of these sources of preclusion
law" where the results would be the same under New York or federal law.  *Pike v. Freeman*, 266 F.3d 78, 90 n.14
(2d Cir. 2001); *see also Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 97 (2d Cir. 1997) (stating that relitigation
would be precluded by the doctrine of res judicata "[u]nder both New York law and federal law . . . .").

NBKS and thus only encompasses the Plaintiffs' intent.[9] *D'Angelo* is not controlling in the current proceeding.

Regardless of whether allowing the notice of dismissal to preclude the 3636 Action "would work an injustice" (Opp'n at 7, ECF No. 1337 (quoting *Vega*, 67 F. Supp. 2d at 335)), the Court has been presented with no grounds for finding that the notice of dismissal was anything other than a final judgment on the merits for purposes of res judicata. The Court will now turn to the third element of res judicata.[10]

### 2. <u>Whether Claims Asserted Could Have Been Raised in Prior Action</u>

The party asserting res judicata must show that "the claims asserted in the subsequent action were, or could have been, raised in the prior action." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 499 (2d Cir. 2014) (quoting *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000)).

Plaintiffs argue that this element of res judicata is not met as the "claims at issue in the 3636 Action were not and could not have been raised in the 3635 Action." Opp'n at 9, ECF No. 1337. Whether Plaintiffs could have raised the claims in the previous action "depends in part on whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first." *Id.* (quoting *Woods v. Dunlop Tire Corp.*, 972 F.2d 36, 38 (2d Cir. 1992)). The Court must "consider 'whether the underlying facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit

---

[9]    Furthermore, the Court notes that *D'Angelo* addresses the preclusive effect of a *state* court proceeding on a subsequent federal action, unlike the present issue of the preclusive effect of a previous *federal* action.

[10]    Neither party has contested the second element, whether the previous action involved the plaintiffs or those in privity with them.

conforms to the parties' expectations or business understanding or usage.'" *TechnoMarine*, 758

F.3d at 499 (quoting *Pike v. Freeman,* 266 F.3d 78, 91 (2d Cir. 2001)).

That the two actions "involved essentially the same course of wrongful conduct" is not

decisive. *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 327–28, 75 S. Ct. 865, 99 L. Ed.

1122 (1955) (internal quotation marks omitted). Courts in this Circuit "consistently hold that the

facts essential to the barred second suit need not be the same as the facts that were necessary to

the first suit. It is instead enough that 'the facts *essential to the second* were [already] present in

the first.'" *Waldman v. Village of Kiryas Joel*, 207 F.3d 105, 110 (2d Cir. 2000) (alterations and

emphasis in original) (quoting *Computer Assoc.s Int'l, Inc. v. Altai, Inc.*, 126 F.3d 365, 369 (2d

Cir. 1997)).

Defendant is correct that the claims in the 3635 and the 3636 Actions "are closely related

and the complaints are virtually identical." Reply at 10, ECF No. 1347. However, this by itself

is not decisive. *See Lawlor* 349 U.S. at 327–28. The Defendant must show that the facts

essential to the 3636 Action were already present in the 3635 Action. *See Waldman*, 207 F.3d at

110.

The Defendant alleges that the complaints in the two actions both pursue a "constructive

trust claim, call for the same evidence to prove the operative facts, and involve the same

plaintiffs and same NBKS entity." *Id.* The Plaintiffs argue that the two actions "involve

different redemption transactions, of different amounts, that occurred on different dates, and

were made through different Citco Record Subscribers . . . . Thus, each action formed a

convenient trial unit, which is evident from the fact that the Liquidators commenced both actions

at the same time." Opp'n at 11, ECF No. 1337. The Plaintiffs further argue that the fact that

they dismissed claims against NBKS in the 3635 Action but not in the 3636 Action shows that the evidence in the two actions stems from different transactions or occurrences. *Id.*

This Court has already held that the actions pursuing separate redemptions in the various broader Fairfield actions "may involve different evidence relating to Citco's bad faith because Citco's knowledge and conduct must be viewed as of the time that it certified the NAV per share." *In re Fairfield Sentry Ltd.*, 596 B.R. 275, 292 (Bankr. S.D.N.Y. 2018), ("*Fairfield II*") ("Accordingly, neither the U.S. nor the BVI doctrines of claim preclusion prevent the Liquidators from arguing that Citco's bad faith allows them to recover the inflated redemption payments."), *aff'd sub nom. Fairfield Sentry Ltd. v. Citibank, N.A. London*, 630 F. Supp. 3d 463 (S.D.N.Y. 2022). The facts underlying the 3635 Action and the 3636 Action are more closely related than the circumstances underlying many of the other Fairfield actions. First, the dates of the relevant redemptions are nearly identical. The 3636 Action seeks to recover payments made "[b]etween April 20, 2004 and November 24, 2008." Am. Compl. ¶ 8, ECF No. 679. The 3635 Action seeks to recover payments made "[b]etween April 20, 2004 and November 19, 2008." Am. Compl. ¶ 8, 3635 ECF No. 620. Second, the alleged Citco subscribers overlap. In both the 3636 and 3635 Actions, the record subscribers (1) were "wholly owned subsidiaries or, at a minimum affiliates, of the Citco Banks;" (2) "operated principally if not solely as vehicles for the custody of shares purchased for Defendants by the Citco Banks;" (3) acted as the nominee and agent of the Citco Banks, with connection to such share purchases; and (4) "entered into the relevant [] Agreements with the Fairfield Funds for and on behalf of the Citco Banks." Am. Compl. ¶ 131, ECF No. 679; Am. Compl. ¶ 123, 3635 ECF No. 620.

The dozens of defendants in the 3635 and 3636 Actions also overlap. The 3636 Action seeks redemptions made to "accounts held in the names of Citco Global Custody NV, Citco

Global Custody (NA) NV, Citco Fund Services (BVI), and Citco Fund Services (Europe) BV." Am. Compl. ¶ 8, ECF No. 679.  The 3635 Action seeks redemptions made to "accounts held in the name of CGC NA."  Am. Compl. ¶ 8, 3635 ECF No. 620.  CGC NA was another name for Citco Global Custody (NA) NV.[11]  Pls.' Counterstatement ¶ 15, ECF No. 1338.  Plaintiffs attempt to exaggerate the differences here when they state that the redemptions sought in the 3636 Action and allegedly redeemed by NBKS were only made through "Citco Global Custody NV (a Netherlands entity), an entirely different Citco Record Subscriber not discussed in the 3635 Action."  *Id.* ¶ 16.  Even taking this as true, Plaintiffs fail to sufficiently explain why the claims pursued in one action could not have been raised in the other.

The claims at issue in the 3635 Action and the 3636 Action are related in time in that the complaints allege redemptions occurring over the same period, with only one day difference. *See* Am. Compl. ¶ 132, 3635 ECF No. 620; Am. Compl. ¶ 140, ECF No. 679.  They are related in space in that many of the entities relevant to the dispute are located in the same jurisdictions: the United States as the location of BLMIS and the Fairfield Greenwich Group, the British Virgin Islands as the location of Sentry's registered address, and the Netherlands as the location of the record subscriber in the 3636 Action and at least one record subscriber, Citco Global Custody (NA) NV, in the 3635 Action.  They are related in that the dozens of defendants named in both 3635 and 3636 Actions are alleged to have received payments from Citco record subscribers based on known inflated NAVs.  They form a convenient trial unit, as evidenced by the fact that this Court consolidated the proceedings.  The claims are therefore based on the same transaction or occurrence.  *See Pike v. Freeman*, 266 F.3d 78, 91 (2d Cir. 2001) ("To ascertain

---

[11]    In related adversary proceeding No. 19-01122, a stipulation explains that CGC NA is not a legal entity, but instead a "shorthand terms sometimes used as abbreviation[] for Citco Global Custody (NA) N.V."  Stip., Adv. Pro. No. 19-01122, ECF No. 63.

whether two actions spring from the same 'transaction' or 'claim,' we look to whether the

underlying facts are 'related in time, space, origin, or motivation, whether they form a

convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations

or business understanding or usage . . . .'" (quoting *Interoceanica Corp. v. Sound Pilots, Inc.*,

107 F.3d 86, 90 (2d Cir. 1997)).

The Second Circuit has explained that the determination of whether claims could have

been brought in a previous action "can be complicated by the 'at-times-difficult determination of

what degree of conduct' following the first judgment is necessary to give rise to a new 'claim.'"

*TechnoMarine*, 758 F.3d at 499 (quoting *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 383 (2d

Cir. 2003). However, as the Second Circuit has noted:

> To be clear, when a defendant commits repeated acts, each of which can
> independently support a cause of action, claim preclusion principles *will* require
> plaintiffs seeking relief as to all of the defendant's conduct to bring together the
> causes of action that have already arisen when the litigation commences, provided
> that such acts are based on the same connected series of transactions.

758 F.3d at 500–01. While the two sets of alleged redemptions may have independently given

rise to causes of action, the redemptions alleged in the 3635 and 3636 Actions could have been

brought together for purposes of res judicata.

Having found that the elements of res judicata are met, the Court will now consider a

possible exception to the application of res judicata.

### 3.  <u>Concurrent Cases Before the Same Judge</u>

Plaintiff argues that because "the 3636 Action was a simultaneously pending related case

before the same judge (rather than a newly attempted suit following a dismissal with prejudice)"

res judicata should not apply. Opp'n at 7, ECF No. 1337. "[W]hen two actions are pending

which are based on the same claim, or which involve the same issue, it is the final judgment first

rendered in one of the actions which becomes conclusive in the other action ..., regardless of which action was first brought." *Riel v. Stanley*, 2009 WL 2431497, at *4 (S.D.N.Y. Aug. 6, 2009). Furthermore, a "plaintiff cannot avoid the effects of res judicata by 'splitting' his claim into various suits, based on different legal theories (with different evidence 'necessary' to each suit)." *Waldman v. Village of Kiryas Joel*, 207 F.3d 105, 110 (2d Cir. 2000) (quoting *Woods v. Dunlop Tire Corp.*, 972 F.2d 36, 39 (2d Cir. 1992)). Rather, "'it is the facts surrounding the transaction or occurrence which operate to constitute the cause of action [for res judicata purposes], not the legal theory upon which a litigant relies." *Karamoko v. New York City Hous. Auth.*, 170 F. Supp. 2d 372, 377 (S.D.N.Y. 2001) (alteration in original) (quoting *Saud v. Bank of New York*, 929 F.2d 916, 919 (2d Cir. 1991)).

A plaintiff has "no right to maintain two actions on the same subject in the same court, against the same defendant at the same time." *Curtis v. Citibank, N.A.*, 226 F.3d 133, 139 (2d Cir. 2000). "Res judicata is, thus, 'a rule against the splitting of actions that could be brought and resolved together.'" *Arnold v. Beth Abraham Health Servs., Inc.*, No. 09 CIV. 7932 (DLC), 2010 WL 2179956, at *5 (S.D.N.Y. May 27, 2010) (quoting *Nestor v. Pratt & Whitney*, 466 F.3d 65, 70 (2d Cir. 2006)).

Generally, the rule against "claim splitting . . . prohibits a plaintiff from prosecuting its case piecemeal, and requires that all claims arising out of a single wrong be presented in one action." *Coleman v. B.G. Sulzle, Inc.*, 402 F. Supp. 2d 403, 418–19 (N.D.N.Y. 2005). "There is a close relationship between claim splitting and res judicata . . . . Under the former doctrine, 'a party cannot avoid the effects of res judicata by splitting her cause of action into separate grounds of recovery and then raising the separate grounds in successive lawsuits.'" *Coleman*, 402 F. Supp. 2d at 419; *see also In re Methyl Tertiary Butyl Ether Prod. Liab. Litig.*, 209 F.R.D.

16

323, 339 (S.D.N.Y. 2002) ("Claim-splitting is generally prohibited by the doctrine of res

judicata.").

When "claim-splitting is involved, simple dismissal is . . . appropriate because plaintiffs

have no right to maintain two actions on the same subject in the same court, against the same

defendant at the same time." *Coleman*, 402 F. Supp. 2d at 421. "Dismissal is not the only

option, however. Instead of outright dismissal, a court may 'stay the second suit, dismiss it

without prejudice, enjoin the parties from proceeding with it, or consolidate the two actions.'"

*Id.* (quoting *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000) (citations omitted)).

There is a "narrow exception under Second Circuit law" to the rule against claim

splitting. *Arnold v. Beth Abraham Health Servs., Inc.*, No. 09 CIV. 7932 (DLC), 2010 WL

2179956, at *6 (S.D.N.Y. May 27, 2010). "[T]he Court of Appeals held that res judicata does

not bar a second lawsuit where both the first and second lawsuits were pending in the same court

at the same time and where the court was aware that the cases were related." *Id.* (citing *Devlin v.*

*Transp. Commc'ns Int'l Union*, 175 F.3d 121, 129–30 (2d Cir. 1999) ("*Devlin*")). The Second

Circuit has stated that "the procedural tool of consolidation, and not the application of res

judicata, is '[t]he proper solution to the problems created by the existence of two or more cases

involving the same parties and issues, simultaneously pending in the same court.'" 2010 WL

2179956, at *6 (alterations in original) (quoting *Devlin*, 175 F.3d at 130).

In *Devlin*, retired union members filed a suit on February 2, 1995, ("*Devlin I*") in the

district court challenging, *inter alia*, the imposition of a $100 charge for medical benefits, which

they brought in a case under the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001,

*et seq.* ("ERISA"), New York state law prohibitions on age discrimination, and common-law

breach of contract. *Devlin*, 175 F.3d at 124. On June 26, 1995, the district court in *Devlin I* held

that the state-law claims were preempted by ERISA.  *Id.*[12]  On September 15, 1997, the district

court in *Devlin I* granted summary judgment for the defendants on the ERISA claim, thereby

dismissing the remainder of the complaint.  *Id.*[13]

On December 22, 1995, the same plaintiffs filed another action asserting claims under the

Age Discrimination in Employment Act ("ADEA") in the same district court ("*Devlin II*").

*Decvlin*, 175 F.3d at 124.  *Devlin II* was thus filed in and pending before the same district court

in *Devlin I* after that court dismissed the state law claims but before it had ruled on the remaining

ERISA claims.  *Id.*  The district court held in *Devlin II* that the ADEA claims were barred by the

doctrine of res judicata, as they could have been asserted in *Devlin I*.  *Id.* at 128.[14]  The plaintiffs

appealed to the Second Circuit, which vacated the district court's application of res judicata in

*Devlin II* and remanded for consideration of consolidation.  *Id.* at 128–30.

Defendant argues that what the Second Circuit in *Devlin*, "actually says is that, because

the two cases were pending before the same judge at the same time, that judge should have

consolidated them and, if he had, res judicata would not apply."  Reply at 7, ECF No. 1347.

Defendant goes on to add, somewhat confusingly, that "the judge did not do so, the parties did

not seek consolidation, and consolidation would not have prevented res judicata termination of

the non-dismissed case."  *Id.*[15]  However, the Second Circuit, in fact, "vacate[d] the district

---

[12]    *See also Devlin v. Trans. Commc'ns Int'l Union*, No. 95 CIV. 0742 (JFK), 1995 WL 380374, at *3
(S.D.N.Y. June 26, 1995), *aff'd in part, rev'd in part*, 173 F.3d 94 (2d Cir. 1999).

[13]    *See also Devlin v. Trans. Commc'ns Int'l Union*, No. 95 CIV. 0742 (JFK), 1997 WL 570512, at *10
(S.D.N.Y. Sept. 15, 1997), *aff'd in part, vacated in part, remanded*, 173 F.3d 94 (2d Cir. 1999).

[14]    *See also Devlin v. Transp. Commc'ns Int'l Union*, No. 95 CIV. 10838 (JFK), 1997 WL 634179, at *8
(S.D.N.Y. Oct. 15, 1997), *aff'd in part, vacated in part, remanded*, 175 F.3d 121 (2d Cir. 1999).

[15]    The Defendant also challenges what it refers to as the "precedential legitimacy" of *Devlin* when it argues
that the Second Circuit "cites no authority for its assertion," and that it "creat[es] an exception" based on
"[h]ypothetical facts . . . ."  Reply at 7–8, ECF No. 1347.  This Court rejects Defendant's argument and will follow
the Second Circuit's analysis in *Devlin*.

court's application of res judicata," and remanded for consideration of consolidation. *Devlin*, 175 F.3d at 130. This Court does not agree with Defendant's proposed hypothetical resolution to the circumstances in *Devlin*. The argument and analysis are contrary to the analysis of multiple other courts that have followed *Devlin*.

In 2014, the Second Circuit stated:

'[B]oth *Devlin* cases were on the court's active calendar such that we [could] conclude the district court could well have considered consolidating them.' [*Devlin* 175 F.3d] at 130; *see also Miller v. U.S. Postal Serv.*, 729 F.2d 1033, 1036 (5th Cir.1984) ("The proper solution to the problems created by the existence of two or more cases involving the same parties and issues, simultaneously pending in the same court would be to consolidate them under Rule 42(a) of the Federal Rules of Civil Procedure." (internal quotation marks omitted)).

*Fried v. LVI Servs., Inc.*, 557 F. App'x 61, 65 (2d Cir. 2014). In *Charles v. City of New York*, No. 99 CIV. 3786 (RWS), 2007 WL 2728407 (S.D.N.Y. Sept. 17, 2007), the District Court declined to follow *Devlin* because the two actions before it "were not assigned to the same district judge" and the court did not have the power to revisit the dismissal with prejudice of the first action. 2007 WL 2728407 at *8.

As the First Circuit Court of Appeals has explained, "[f]rom the [*Devlin*] court's extensive analysis, it is clear that the Second Circuit found that res judicata was not appropriate in such a situation and contemplated that consolidation below would cure any future similar problems." *Bay State HMO Mgmt., Inc. v. Tingley Sys., Inc.*, 181 F.3d 174, 181 (1st Cir. 1999). The First Circuit, in following *Devlin*, found that application of res judicata was inappropriate where the plaintiff "did not wait until the termination of the first case to commence the second case" and "actively sought to bring the case to the attention of the district court to have it consolidated . . . ." *Id.* (citing *Devlin* and listing "several cases that have suggested or assumed that consolidation precludes the use of the doctrine of res judicata to bar one action when the

other action is resolved first"); *see also Russo v. City of Hartford*, 419 F. Supp. 2d 134, 142 (D. Conn. 2006) ("The court concurs with the reasoning of the First Circuit in *Bay State*, and finds that the cases before the court were consolidated for all purposes such that the policies behind res judicata do not militate in favor of its application here."). When a court finds these circumstances exist, res judicata is inappropriate as "[t]here was no final judgment on the merits in an earlier action; there was only a final judgment on a portion of the aggregate case." *See Bay State*, 181 F.3d at 182.

The Defendant next argues that consolidation of the actions "does not change the separateness of the consolidated cases." Reply at 7, ECF No. 1347 (quoting *Hall v. Hall*, 584 U.S. 59, 77, 138 S. Ct. 1118, 1126 (2018)). As support for its contention that "separateness does not have an exception," Defendant cites to *Hall v. Hall*, 4 U.S. 59, 138 S. Ct. 1118 (2018) and *Johnson v. Manhattan R. Co.*, 289 U.S. 479, 53 S. Ct. 721 (1933). Reply at 7. In *Johnson*, the Supreme Court stated that consolidation "does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another." *Johnson*, 289 U.S. at 496–97. In *Hall*, the Supreme Court determined that consolidation under Federal Rule of Civil Procedure 42(a) does not merge all aspects of two actions into one whole and that the "constituent cases retain their separate identities at least to the extent that a final decision in one is immediately appealable by the losing party." *Hall*, 584 U.S. at 77. Neither of these cases analyzed the effects of consolidation on res judicata.

While it is true that consolidated cases are not merged into a single action, applying this principle to the issue of res judicata "ignores the fact that consolidated actions are treated as a single action for some purposes, such as discovery or trial." *Bay State HMO Mgmt., Inc. v. Tingley Sys., Inc.*, 181 F.3d 174, 180 (1st Cir. 1999). In adopting the Second Circuit's reasoning

in *Devlin*, the First Circuit treated two actions "that were closely related and pending before the same judge at the same time" as a "single action for res judicata purposes." *Id.* at 180–81; *see also Mendoza v. Amalgamated Transit Union Int'l*, 2020 WL 2112121, at *11 (D. Nev. May 4, 2020), *aff'd*, No. 20-16079, 2022 WL 1045603 (9th Cir. Apr. 7, 2022) ("[T]he *Bay State* court was careful to note that actions retain their separateness despite consolidation and rejected the notion 'that consolidated actions must always be treated as separate actions for all purposes.'"). The First Circuit explained that res judicata is a "a judge-made doctrine resting on policy considerations" and none of the policy concerns underlying it are implicated under such circumstances. 181 F.3d. at *181.

The situation presently before the Court closely matches the circumstances before the courts in *Arnold*, *Devlin*, and *Bay State*. The 3635 and 3636 Actions have been proceeding before this Court for over a decade. While the cases have been reassigned over those years, they have never been presided over by separate judges. This case fits squarely into the exception outlined by the District Court in *Arnold*, the Second Circuit in *Devlin* and *Fried*, and the First Circuit in *Bay State*.

Applying the narrow exception is appropriate. Defendant has had ample time to object to the claims being split between the two actions. Defendant chose to wait until after the Plaintiffs dismissed claims against it in the 3635 Action to raise the issue and claim res judicata. Whatever harm may have been present in the claims against Defendant being commenced in two separate proceedings had already been addressed by this Court when it consolidated the two cases. *See* Am. Order Regarding Consolidation, ECF No. 921. To now bar the Plaintiffs from pursuing claims against NBKS in the 3636 Action would penalize the Plaintiffs for dismissing claims that it does not wish to pursue, that impose costs on this Court as well as the parties, and that the

Defendant presumably would prefer to see dismissed.  Granting NBKS's motion for summary

judgment would contravene the "underlying purpose" of the doctrine of res judicata: to

"promot[e] judicial economy by preventing needless litigation."  *Greco v. Local.com Corp.*, 806

F. Supp. 2d 653, 661 (S.D.N.Y. 2011) (quoting *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S.

322, 326, 99 S. Ct. 645, 58 L. Ed.2d 552 (1979)).

## V.        <u>CONCLUSION</u>

For the foregoing reasons, the Defendant's motion for summary judgment is denied.  The

Plaintiffs shall submit a proposed order within fourteen days of the issuance of this decision,

directly to chambers, upon not less than two days' notice to all parties, as required by Local

Bankruptcy Rule 9074-1(a).

**IT IS SO ORDERED.**


Dated:  September 30, 2024
          New York, New York

                                        /s/ John P. Mastando III
                                        THE HONORABLE JOHN P. MASTANDO III
                                        UNITED STATES BANKRUPTCY JUDGE